RALEIGH CITY LIMITS, INC., D/B/A "MONDAY'S" v. H.A. SANDMAN, BERTHA KATZ, AND T.W. SMITH, D/B/A SKS PROPERTIES

No. 8010DC228

(Filed 7 October 1980)

**Landlord and Tenant § 18– belated payment of rent – waiver of right to declare lease in default**

Defendants waived their right to declare a lease in default because the

rent for one month was not timely paid when they took plaintiff's checks for that month and for succeeding months and converted them into "official bank checks" payable to defendants.

APPEAL by plaintiff from *Barnette, Judge.* Judgment entered 1 October 1979 in District Court, WAKE County. Heard in the Court of Appeals on 10 September 1980.

On 2 October 1979, plaintiff filed a complaint in the district court seeking to have defendants enjoined "from denying plaintiff the right to enter said premises under the terms of the lease agreement entered into in April, 1977," asking for "such monetary damages as may be suffered by reason of defendants' refusal to allow them to enter said premises, . . ." seeking that "the costs of this action be taxed against defendants," and seeking that "this Court award such other and further relief as to it may seem just and proper." On 2 November 1978, defendants submitted an answer and counterclaim admitting the existence of a lease agreement dated 18 April 1977 covering certain premises. Defendants alleged, however, that the lease entitled them to terminate and take possession upon plaintiff's failure to pay rent on time and upon plaintiff's use of a "materially changed method of operation." Plaintiff replied on 2 January 1979, denying the material allegations of the counterclaim.

An understanding of the facts of this case can best be obtained by quoting the unchallenged findings by the judge after trial before him without a jury:

1. A lease agreement was entered into between the plaintiff corporation as tenant and the defendant partnership as landlord for the lease of a certain space located at 2404 1/2 Hillsborough Street in Raleigh, North Carolina. The date of the lease was April 18, 1977. It was to run until August 31, 1982.

2. The only stockholder of the plaintiff corporation from April 18, 1977, until August 18, 1978, was Pat Gryder.

3. The lease provided that the premises was [sic] only to be used as a club by the Plaintiff. The word "club" is not defined in the lease.

To H. Arthur Sandman, one of the partners in the Defendant and the Defendants' negotiator, the word "club" in

the lease meant a nice tavern that sold beer but did not have live entertainment nor had special sales of beer.

To Pat Gryder the word "club" in the lease did include live entertainment and beer specials.

There was never a meeting of the minds between Sandman and Gryder at the inception of the lease as to whether or not the word "club" included live entertainment and beer specials.

4. On or about August 18, 1978, Pat Gryder sold his stock in the plaintiff to Barry Lee Green and John Robert Ray.

5. The new owners of the Plaintiff entered into possession of the premises immediately and began running a tavern or club known as "Monday's." This club from its inception regularly featured live entertainment and beer specials. Pat Gryder, when he ran the establishment on the same premises, from time to time, had live entertainment and beer specials but never to the degree the new operation did.

6. Sandman, on behalf of the Defendant, objected to this use of the premises by the Plaintiff as run by Green and Ray and continues to object.

7. Other tenants of the Defendant in the same building have also objected.

8. The Court cannot find that the Defendant has suffered any actual damages as a result of the Plaintiff's operation of the premises.

9. The lease provided that the Plaintiff was to pay the regular monthly rent in advance on the first day of each month.

The lease further provided that if the rent was not paid within ten (10) days after the rent was regularly due, the Defendant could declare the lease in default.

10. The rent that was due on August 1, 1978, was not paid on that day or within ten (10) days thereafter.

11. The rent which was due on August 1, 1978, was tendered after August 10, 1978.

On August 22, 1978, Sandman, on behalf of the defendant, notified Pat Gryder by letter, with copies to Barry Green and his attorney, that as of that date he was refusing the tender of the August rent, and that he was declaring the lease in default unless their differences over the operation of the premises could be resolved.

12. On September 5, 1978, Barry Green paid September's rent and has paid each month's rent thereafter within ten (10) days of the first of each month.

13. On September 28, 1978, Sandman, on behalf of the Defendant, notified the attorney for the Plaintiff that the checks tendered as August rent and September rent were not being accepted, and the lease was still considered by the Defendant to be in default. Each check received was converted into official bank checks and held by Sandman but not deposited in the Defendant's account.

14. Every month when the Plaintiff tendered the rent, Sandman, on behalf of the Defendant, followed the same procedure as stated in Finding of Fact No. 13.

15. In the notice of September 28, 1978, Sandman further notified the Plaintiff that the Defendant intended to take possession of the premises on October 1, 1978.

On that day the Defendant attempted to take possession but was unsuccessful.

Up until the present time the Defendants' efforts to take possession have continued to be unsuccessful.

Based upon these findings of fact, the court made the following pertinent conclusions of law:

1. The Plaintiff has not used the leased premises in a way that was unintended by the lease.

2. The Defendant is not entitled to recover anything of the Plaintiff as damages for acts or omissions arising out of the use of the premises under the lease over and above the amount ordered below, for the Plaintiff's occupancy of the

premises while this matter has been and remains in dispute.

. . .

5. The Defendant did not waive its right to consider the lease in default.

Based on the foregoing findings of fact and conclusions, the trial judge entered judgment for defendants. Plaintiff appealed.

*J. Franklin Jackson, for the plaintiff appellant.*

*Lake & Nelson, by Broxie J. Nelson, for the defendant appellees.*

HEDRICK, Judge.

The sole question presented by this appeal is whether the trial judge erred in concluding that defendants did not waive their right to declare the lease in default on the grounds that the August 1978 rent, and succeeding month's rent, was not timely paid. In *Winder v. Martin,* 183 N.C. 410, 411, 111 S.E. 708, 709 (1922), the Supreme Court stated:

> It is the generally accepted rule that if the landlord receive rent from his tenant, after full notice or knowledge of a breach of a covenant or condition in his lease, for which a forfeiture might have been declared, such constitutes a waiver of the forfeiture which may not afterwards be asserted for that particular breach, or any other breach which occurred prior to the acceptance of the rent . . . .

In *Office Enterprises, Inc. v. Pappas,* 19 N.C. App. 725, 200 S.E. 2d 205 (1973), this Court, citing *Winder v. Martin, supra,* held that a landlord is estopped from claiming a breach and demanding forfeiture of the lease when a check for the payment of rent, although tendered late and never cashed, was taken by the landlord and delivered to his attorney.

We find the unchallenged finding of fact in the present case, that defendants received plaintiff's check for the August and succeeding months' rent and converted the checks into "official bank checks," to be a waiver of defendants' right to declare the lease in default for failure to pay rent on time. The facts as

found by the trial judge in this case are even more conclusive than the facts in *Office Enterprises, Inc. v. Pappas, supra*. The evidence supporting the findings of fact discloses that defendants actually took plaintiff's checks and converted them into "official bank checks" payable to defendants. Plaintiff's account was debited for each check. The trial court's conclusion that defendants did not waive their right to declare the lease in default is erroneous and not supported by the unchallenged findings.

Manifestly, the unchallenged findings dictate a conclusion that defendants waived any right they had to declare a default for untimely payment. The unchallenged finding by the court that defendants were refusing the tender of August rent, "unless their differences over the operation of the premises could be resolved," illuminates defendants' intentions. Obviously, defendants wanted to exercise, as landlord, more control over plaintiff's operation in the leased premises than was provided in the agreement; and they were availing themselves of the lease provision concerning default in order to do so.

The erroneous conclusion requires that the judgment for defendant be vacated. Since the unchallenged findings dictate the conclusion that defendants waived their right to declare the lease in default, the cause must be remanded to the district court for the making of such a conclusion and the entry of a proper judgment based on the findings and conclusions for plaintiff declaring that the lease is and has been in full force and effect, and that plaintiff is entitled to recover his costs. The judgment is vacated and the cause is remanded to the district court for further proceedings consistent with this Opinion.

Vacated and remanded.

Judges HILL and WHICHARD concur.